

U.S. Department of Justice

United States Attorney
Eastern District of New York

NJM:MS/RMP  
F. #2018R02270

271 Cadman Plaza East  
Brooklyn, New York 11201

May 2, 2022

By ECF and Email

The Honorable Allyne R. Ross  
United States District Court  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

> Re:   United States v. Ezhil Sezhian Kamaldoss & Velaudapillai Navaratnarajah  
>        Criminal Docket No. 19-543 (S-1) (ARR)

Dear Judge Ross:

The defendants Ezhil Sezhian Kamaldoss and Velaudapillai Navaratnarajah are charged in a ten-count superseding indictment with conspiracy to distribute controlled substances, distribution and possession with intent to distribute controlled substances, and money laundering conspiracy.  (See ECF No. 119).  Jury selection is scheduled to begin on June 15, 2022.  In advance of trial, the government respectfully moves in limine and requests that the Court:

(1) admit evidence of the drug-trafficking and money-laundering conspiracies of which both defendants were members, including evidence of acts not charged as separate substantive offenses, as direct evidence of the charged conduct and, alternatively, pursuant to Rule 404(b) of the Federal Rules of Evidence ("FRE");

(2) admit certain statements of the defendants and other co-conspirators, including statements made in audio recordings and in documents and written communications recovered from co-conspirators' electronic devices and email accounts, as opposing party statements and statements made by co-conspirators in furtherance of a conspiracy respectively, pursuant to Rule 801(d)(2) of the FRE;

(3) admit certain documents, including spreadsheets that reflect drug order details, drug payment credits, and drug shipping information, as non-hearsay evidence because they contain directions, commands, or other "verbal acts," rather than statements offered for the truth of the matter asserted; and because, to the extent they contain statements, they are statements of defendants or co-conspirators in furtherance of the conspiracy;

(4) in the event that the parties do not reach stipulations as to authenticity and admissibility,[1] permit the government to authenticate certain electronic evidence by certification pursuant to Rule 902(11) (certified domestic records of regularly conducted activity), (13) (certified records generated by an electronic process or system), and (14) (certified data copied from an electronic device, storage medium or file);

(5) preclude the defendants from arguing or eliciting testimony to relitigate issues underlying the defendants' respective motions to suppress or otherwise to insinuate that evidence was obtained unlawfully or by means of wrongful conduct of law enforcement; and,

(6) preclude the defendants from arguing or eliciting testimony about the consequences attendant to the defendants' convictions in this case.

I. Background

A. Factual Background

The government expects the evidence at trial to show that since at least 2018, the defendants have operated a transnational drug-trafficking conspiracy, which involved the importation of misbranded prescription drugs into the United States from India, packaging the drugs in a warehouse in Queens, and shipping the drugs to domestic customers throughout the United States. The government will also prove that the defendants conspired to launder the proceeds of their drug-trafficking operation by using their drug profits to pay expenses and thereby to promote their drug-trafficking conspiracy, and by using a hawala[2] to conceal the source of money transferred from India to New York.

The government expects that law enforcement witnesses will testify, corroborated by video and/or photographic evidence, that they observed both defendants, on different occasions, leaving a warehouse in Queens with many packages, taking the packages to a post office, and placing the packages in the mail; and that the officers removed and subsequently opened a selection of those packages pursuant to search warrants and found them to contain drugs. Law enforcement later executed a search warrant on the warehouse and found more drugs, and the government will offer evidence that ties both defendants to that warehouse.

The government expects that cooperating witnesses, including co-conspirators who have pleaded guilty for their own roles in the conspiracy as well as a confidential informant who worked with both defendants in the warehouse under government supervision and wore a

---

[1] The government's efforts to work toward agreeable stipulations have not been fruitful to date. Nevertheless, the government will continue in good faith to engage with counsel regarding potential stipulations to limit the number of necessary witnesses and trial days.

[2] The government expects witness testimony at trial will explain that hawala is an informal system used to transfer money, typically across borders, whereby money is paid to an agent who instructs a distant associate to pay the final recipient, and that such a system was used by the defendants in this case.

recording device while he did so, will testify about the inner workings of the conspiracy. This testimony will be corroborated by the recordings made by the confidential source, as well as by emails, text messages, and other documents recovered from email accounts and electronic devices of co-conspirators. In particular, the government expects to introduce portions of audio recordings of the defendants made by a confidential informant from inside the warehouse on April 24, 2019, and April 25, 2019, which capture, among other things, defendant Navaratnarajah giving instructions to the confidential informant regarding the number and type of pills to package into envelopes, and other statements of the defendants that corroborate details of their criminal scheme.

The government will likewise introduce spreadsheets, such as that attached hereto as Exhibit A, that were sent and received via email correspondence through an email address utilized by the defendants detailing drug orders, customer lists, customer addresses, and tracking numbers corresponding to orders filled by the defendants. In addition, the government will introduce ledgers, such as that attached hereto as Exhibit B, that were likewise sent and received by an email address utilized by the defendants that tracked the quantity of pills ordered, cost of the pills, and profit and loss statements for accounts maintained by the defendants for certain months of the conspiracy. Among other evidence, witness testimony will corroborate the drug-ledger entries.

B.   Procedural Background

Defendant Kamaldoss was arrested on September 12, 2019, and defendant Navaratnarajah was arrested on February 1, 2020, each pursuant to an arrest warrant issued upon a complaint that charged ten defendants with conspiracy to distribute Tramadol, a Schedule IV controlled substance, in violation of 21 U.S.C. § 846. (See 19-MJ-793.)

On November 15, 2019, a grand jury sitting in this district returned an indictment charging defendant Kamaldoss (alone) with one count of conspiracy to distribute Tramadol, in violation of 21 U.S.C. §§ 846 and 841(b)(2). (See ECF No. 83.)

On April 9, 2021, a grand jury sitting in this district returned a superseding indictment charging both defendants with conspiracy to distribute Tramadol, Alprazolam, and Carisoprodol, all Schedule IV controlled substances, in violation of 21 U.S.C. §§ 846 and 841(b)(2) (Count One); and money laundering conspiracy, in violation of 18 U.S.C. § 1956(h) (Count Ten); as well as charging defendant Kamaldoss with five substantive counts of attempted distribution and possession with intent to distribute particular quantities of Schedule IV controlled substances on a particular date, in violation of 21 U.S.C. § 841(b)(2) (Counts Two through Six); and charging defendant Navaratnarajah with three substantive counts of distribution and possession with intent to distribute particular quantities of Schedule IV controlled substances on a particular date, in violation of 21 U.S.C. § 841(b)(2) (Counts Seven through Nine).

In February 2022, defendants filed suppression motions (see ECF Nos. 159, 162, 163), raising numerous challenges to the government's use of evidence obtained against them, and, in defendant Kamaldoss's motion, seeking to dismiss the superseding indictment. On March 16, 2022, the government filed its opposition to the motions (see ECF No. 166), and on March 30, 2022, the defendants filed replies (see ECF Nos. 167-68). The Court held an

3

evidentiary hearing on April 12, 2022 (see ECF No. 178), and on April 22, 2022 issued an opinion and order denying the motions in their entirety (see ECF No. 182).

Jury selection is set for June 15, 2022.

II. Evidence of the Scope and Methods of the Charged Conspiracies Is Admissible as Direct Evidence of the Conspiracies and, Alternatively, Pursuant to Rule 404(b)

At trial, the government intends to present evidence of the scope of the large-scale drug distribution conspiracy of which the defendants were members. This evidence—including the expected testimony of cooperating witnesses, and documents and records obtained from co-conspirators' email accounts and electronic devices—will show that the defendants committed acts that were not charged as separate substantive offenses, and will also include evidence about the criminal conduct of co-conspirators. This evidence is admissible as direct proof of the charged conspiracies, and, alternatively, pursuant to Rule 404(b). Specifically, this evidence demonstrates, among other things, that the drug trafficking organization existed, as well as its purposes, means and methods; and the defendants' relationships with co-conspirators. Moreover, this conduct is inextricably intertwined with and necessary to complete the broader narrative of the drug trafficking organization, the existence of which will be the subject of witness testimony.

"[I]t is . . . well established in the Second Circuit that where an indictment contains a conspiracy charge, 'an act that is alleged to have been done in furtherance of the alleged conspiracy' is considered 'part of the very act charged.'" United States v. Rivera, No. 13-CR-149 (KAM), 2015 WL 1875658, at *3 (E.D.N.Y. Apr. 22, 2015) (quoting United States v. Diaz, 176 F.3d 52, 79 (2d Cir. 1999) (alteration omitted)); see United States v. Thai, 29 F.3d 785, 812 (2d Cir. 1994) (in conspiracy cases, "uncharged acts may be admissible as direct evidence of the conspiracy itself"). "'To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency.'" United States v. Kahale, 789 F. Supp. 2d 359, 381 (E.D.N.Y. 2009) (quoting United States v. Williams, 585 F.3d 703, 707 (2d Cir. 2009)). "Thus, evidence is often admissible to provide background for the events alleged in the indictment or to enable the jury to understand the complete story of the crimes charged." Id. The "sheer volume" of a drug conspiracy is not a basis to exclude evidence of the conspiracy. See United States v. Ulbricht, 79 F. Supp. 3d 466, 484 (S.D.N.Y. 2015).

Evidence relating to the drug trafficking organization and the acts of that organization—including acts of the defendants' co-conspirators in furtherance of the drug distribution conspiracy and evidence of the conspiracy's operation—are, by definition, "'proof of acts . . . within the scope of the conspiracy,'" and are therefore admissible. United States v. Drayton, 796 F. App'x 24, 26 (2d Cir. 2019) (quoting United States v. Bagaric, 706 F.2d 42, 64 (2d Cir. 1983)); see also United States v. Paredes, 176 F.2d 172, 178 n.3 (S.D.N.Y. 2001) (same) (quoting Thai, 29 F.3d at 812). That is "because 'an act that is alleged to have been done in furtherance of the alleged conspiracy is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged.'" United States v. Rodriguez, 727 F. App'x 24, 26 (2d Cir. 2018) (quoting Thai, 29 F.3d at 812).

Even if evidence of uncharged crimes or "other acts" were not admissible as direct proof of the charged conspiracies—and it is—such evidence is alternatively admissible

4

pursuant to Rule 404(b) because the government seeks to admit such evidence not for the improper purpose of establishing the defendants' propensity for committing certain crimes but because it provides the necessary background to inform the jury of the complete story related to the crimes charged. Without this evidence, the jury would not be able to understand how the "criminal relationship developed" between participants in the conspiracy. United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992) ("Prior act evidence may be admitted to inform the jury of the background of the conspiracy charged, to complete the story of the crimes charged, and to help explain to the jury how the illegal relationship between participants in the crime developed.").

    Evidence of uncharged crimes or "other acts" is admissible pursuant to Rule 404(b) if it is relevant to the issues of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988). The Second Circuit has emphasized that Rule 404(b) is a rule of broad reach and liberal application, and applies an "inclusionary or positive approach" to admitting "other acts" evidence. See United States v. Garcia, 291 F.3d 127, 136 (2d Cir. 2002) (citing Pitre, 960 F.2d at 1118); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the inclusionary or positive approach to [Rule 404(b)]; as long as the evidence is not offered to prove propensity, it is admissible."). A party must satisfy three requirements for evidence of "other crimes, wrongs or acts" to be admitted under the rule. First, the evidence must be offered for a purpose other than to prove a defendant's bad character or criminal propensity. United States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (The government "must explain in detail the purposes for which the evidence is sought to be admitted."); United States v. Colon, 880 F.2d 650, 656 (2d Cir. 1989). Second, the evidence must be relevant under Rules 401 and 402 and not run afoul of Rule 403. Mickens, 926 F.2d at 1328; Ortiz, 857 F.2d at 903. Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction. Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

    Additional bases for admitting "other acts" evidence under Rule 404(b), which apply in this case, include "corroborat[ing] crucial prosecution testimony" if the corroboration is "direct and the matter corroborated is significant," United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987) (internal quotation marks omitted), and, where impeachment of a government witness based on prior bad acts is anticipated, allowing the government to elicit the witness's testimony about such acts on direct examination so as to avoid the appearance that the government is concealing such purported impeachment evidence from the jury, see, e.g., United States v. Guerrero, 882 F. Supp. 2d 463, 493 (S.D.N.Y. 2011) (citing United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991)). Finally, to the extent that evidence of an uncharged crime includes an inculpatory admission by a cooperating witness who participated in the uncharged crime jointly with a defendant, such evidence also is admissible under Rule 404(b) to corroborate the witness's testimony. Everett, 825 F.2d at 660; United States v. Mejia Valez, 855 F. Supp. 607, 611 (E.D.N.Y. 1994).

    The government anticipates calling co-conspirators complicit in the defendants' crimes to testify and will elicit from them testimony about their own criminal conduct. The government will seek to corroborate the testimony of those co-conspirators with documentary evidence about the inner workings of the charged conspiracies, which will include evidence of the defendants' criminal acts, not all of which were charged as separate substantive offenses.

The high probative value of this evidence far outweighs any potential unfair prejudice. It is well established that where evidence of other conduct offered at trial is not more serious than the charged conduct, the evidence is not unduly prejudicial. Williams, 205 F.3d at 34. In this case, the probative value of this evidence is clear—it proves, among other things, the existence and scope of the charged conspiracies, the relevant participants, the means by which the conspiracies operated, and context for the relationships among the defendants and their co-conspirators; and it additionally serves to corroborate witness testimony and provide the jury with critical information for assessing witness credibility. In contrast, the risk of unfair prejudice arising from such evidence is minimal, given that the other acts "did not involve conduct any more sensational or disturbing" than the offenses charged. Pitre, 960 F.2d at 1120 (internal quotation omitted). Indeed, given that the defendants are charged with participating in drug-trafficking and money-laundering conspiracies, evidence of other acts in furtherance of the same conspiracies is, by definition, no more sensational or disturbing than the offenses charged.

Accordingly, testimony and other evidence of the scope and methods of the charged drug-trafficking and money-laundering conspiracies, including evidence of the conduct of co-conspirators and conduct of the defendants that are not charged as substantive offenses separately from the conspiracies, should be admitted.

### III. Statements of the Defendants and Other Co-Conspirators Are Admissible Pursuant to Rule 801(d)(2) When Offered by the Government

The government expects to offer evidence of statements made by both defendants and by other co-conspirators. This evidence will include audio recordings of conversations, electronic communications, and documents recovered from the email accounts and electronic devices of co-conspirators. These statements are relevant and probative of charged conduct and will corroborate the testimony of cooperating witnesses, and they are admissible as non-hearsay statements of party opponents and as statements of co-conspirators in furtherance of a conspiracy.

#### A. Defendant Statements Are Admissible When Offered by the Government

Pursuant to Rule 801(d)(2)(A) of the FRE, a defendant's out-of-court statement is not hearsay when offered by the government. ("A statement is not hearsay if . . . [it] is offered against a party and is [] the party's own statement."); see also, e.g., United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) (under Rule 801(d)(2)(A), a defendant's statements offered by the government are not hearsay because they are statements of the opposing party).

A defendant, however, does not have a parallel ability to offer his or her own statements into evidence. "When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." Marin, 669 F.2d at 84; see also United States v. Yousef, 327 F.3d 56, 153 (2d Cir. 2003) (the defendant "could have testified to everything asserted in his statement, [but] he could not offer the document itself for the truth of the matter asserted"); United States v. Black, No. 13-CR-316 (DLI), 2014 WL 5783067, at *2 (E.D.N.Y. Nov. 5, 2014) ("[T]he defendant's self-serving [sic], exculpatory statements are inadmissible hearsay . . . ."); United States v. Mahaffy, No. 05-CR-613 (S-3) (ILG), 2007 WL 1094153, at *3-5 (E.D.N.Y. Apr. 10, 2007) (refusing to permit introduction of

6

excerpts of defendant's prior statements because they were "otherwise inadmissible hearsay statements" that were "self-serving" and "exculpatory").

Furthermore, the government's presentation of only a portion of the defendant's prior statements does not make the defendant's other statements admissible. FRE 106 provides, in relevant part, that when a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it. The Second Circuit has found this rule applicable to oral statements as well. See United States v. Johnson, 507 F.3d 793, 796 n.2 (2d Cir. 2007). However, "Rule 106 does not render admissible evidence that is otherwise inadmissible." United States v. Terry, 702 F.2d 299, 314 (2d Cir. 1983); see also United States v. Blake, 195 F. Supp. 3d 605, 610 (S.D.N.Y. 2016) (quoting United States v. Gonzalez, 399 F. App'x 641, 645 (2d Cir. 2016)) (Importantly, "the rule of completeness is 'not a mechanism to bypass hearsay rules for any self-serving testimony'"). Accordingly, the rule "does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Gupta, 747 F.3d 111, 139 (2d Cir. 2014) (citations omitted); United States v. Harper, No. 05-CR-6068, 2009 WL 140125, at *5 (W.D.N.Y. Jan. 20, 2009) ("[A] defendant may not rely on the rule of completeness to put his out-of-court exculpatory statements before the jury through the testimony of another witness . . . , while at the same time maintaining his own Fifth Amendment privilege so as to avoid being cross-examined about his prior statements.").

Rather, the statement specified by the adverse party is only required to be read or heard if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact or (4) insure a fair and impartial understanding of the admitted portion. Marin, 669 F.2d at 82–83; see also United States v. Fawwaz, 691 F. App'x 676, 678 (2d Cir. June 2, 2017) (summary order) (One exception to this principle is the rule of completeness, wherein "an omitted portion of the statement" may be admitted where "necessary to explain the omitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.").

As the Second Circuit made clear in United States v. Jackson, a defendant may not introduce other parts of the same statement offered in part by the government unless the defendant makes a proper showing that the statements he seeks to introduce have a separate basis for admission. 180 F.3d 55, 73 (2d Cir. 1999) (rejecting claim under the completeness doctrine that part of a statement made by the defendant could be admitted because the statement followed an inculpatory admission and noting that "the portions of the tape proffered by [the defendant] consisted largely of [his] own self-serving statements, which, as offered by him, are inadmissible hearsay"); see also United States v. Hill, 658 F. App'x 600, 605 (2d Cir. 2016) (affirming district court's parsing of a defendant's recorded statement to admit the discrete inculpatory statements and exclude the other self-serving statements that he was "innocent"); United States v. Johnson, 507 F.3d 793 (2d Cir. 2007) (holding that the court properly bifurcated a defendant's post-arrest statement and precluded the defense from introducing a self-serving portion of the defendant's post-arrest statement). The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the government intends to offer. United States v. Glover, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent.").

B. <u>Co-Conspirator Statements Are Admissible When Offered by the Government</u>

Pursuant to Rule 801(d)(2)(E) of the FRE, a statement offered against an opposing party and "made by the party's coconspirator during and in further of the conspiracy" is not hearsay. "The law is well settled within this circuit that declarations that are otherwise hearsay may nevertheless be provisionally admitted, subject to connection of the defendant with the conspiracy alleged, as long as the trial court is ultimately satisfied that the participation of the defendant against whom the declaration is offered has been established by a fair preponderance of the evidence independent of the hearsay utterances." <u>United States v. Cambindo Valencia</u>, 609 F.2d 603, 630 (2d Cir. 1979). "To admit a statement under the co-conspirator exception to the hearsay definition, a district court must find two factors by a preponderance of the evidence: first, that a conspiracy existed that included the defendant and the declarant; and second, that the statement was made during the course of and in furtherance of the conspiracy." <u>United States v. Gigante</u>, 166 F.3d 75, 82 (2d Cir. 1999).

"The conspiracy between the declarant and the defendant need not be identical to any conspiracy that is specifically charged in the indictment." <u>Id.</u> Moreover, out-of-court statements by co-conspirators that "provide reassurance, or seek to induce a coconspirator's assistance, or serve to foster trust and cohesiveness, or inform each other as to the progress or status of the conspiracy" are admissible. <u>Id.</u> However, the "Government need not show that the listener, or the person who heard the declarant's statement, was also a member of the conspiracy." <u>United States v. Paredes</u>, 176 F. Supp. 2d 183, 187 (S.D.N.Y. 2001). Indeed, a communication "with a person who is not a member of the conspiracy in a way that is designed to help the coconspirators to achieve the plan's goals" is admissible. <u>Id.</u>

The admission of co-conspirator statements in furtherance of a conspiracy is appropriate irrespective of whether the co-conspirator testifies, because "[i]n general, statements of co-conspirators in furtherance of a conspiracy are non-testimonial." <u>United States v. Logan</u>, 419 F.3d 172, 178 (2d Cir. 2005). "It is well established that the Confrontation Clause bars admission of <u>testimonial</u> statements" of non-testifying witnesses. <u>United States v. Failing</u>, 553 F. App'x 71, 72 (2d Cir. 2014) (quoting <u>Davis v. Washington</u>, 547 U.S. 813, 821 (2006)) (internal quotation marks omitted and emphasis added). Courts "determine whether a statement is or is not 'testimonial' by examining the declarant's awareness or expectation that his or her statements may later be used at a trial." <u>Id.</u> (quoting <u>United States v. Farhane</u>, 634 F.3d 127, 163 (2d Cir. 2011)) (internal quotation marks omitted). Here, where all co-conspirator statements were made prior to arrest and among co-conspirators, or on a recording surreptitiously made by an individual that defendants did not know was acting on behalf of the government, "there is no question that [defendants were] unaware that [they were] speaking to [an] agent[] for the government or that [their] statements might later be used at a trial." <u>Farhane</u>, 634 F.3d at 163. All of the co-conspirator statements are therefore non-testimonial and not subject to challenge under the Confrontation Clause. <u>Id.</u>

IV. <u>Spreadsheets and Ledgers Containing Drug Order and Fulfillment Information Are Admissible as Non-Hearsay, and, Alternatively, as Defendant and Co-Conspirator Statements</u>

The government intends to offer into evidence certain documents, including spreadsheets and ledgers such as those attached as Exhibits A–B and further described above,

8

that defendants and co-conspirators maintained on electronic devices and emailed or otherwise shared with one another to communicate drug orders and fulfillment information, running account balances, and shipment information.

To the extent these documents reflect entries by co-conspirators sent to the defendants detailing drug orders, these documents are not offered for the truth of any "statement" they contain, but rather to establish that the defendants and their co-conspirators used, relied, and acted upon them as an integral component of their execution of the charged conspiracies. That is, to the extent that any information included in these documents constitutes a "statement" at all—for instance, statements that particular customers at particular mailing addresses ordered particular quantities of particular drugs—the truth and accuracy of those statements is not at issue. Rather, as witness testimony will establish, corroborated by the documents and recorded communications themselves, the information in the documents was entered by co-conspirators to communicate instructions to other co-conspirators and to track respective accounts amongst co-conspirators, and the defendants acted upon the instructions in those documents by distributing drugs. Thus, because "the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Crawford v. Franklin Credit Mgmt. Corp., No. 08-CV-6293 (KMW), 2015 WL 1378882, at *3–4 (S.D.N.Y. Mar. 26, 2015) (quoting Fed. R. Evid. 801(c) advisory committee's note); cf. United States v. Bellomo, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands . . . or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay.").

Insofar as the information contained in drug order spreadsheets and ledgers reflect statements offered for their truth rather than for the effect on the defendants who acted upon them, such as in the entries reflecting the shipping information of the orders filled by the defendants, witness testimony will establish that the documents were generated and maintained by co-conspirators in furtherance of the conspiracy, and thus all "statements" in them are admissible as defendant and co-conspirator statements for the reasons discussed above.

V. In the Event that the Parties Do Not Enter Stipulations, the Court Should Allow the Government to Authenticate Certain Documents and Records by Certification

In the interest of streamlining trial and avoiding unnecessary witnesses, the government has been attempting in good faith to reach agreement with the defendants about stipulations as to the authenticity and admissibility of certain electronic evidence. In the event that those efforts fail and the parties do not enter stipulations, the government will seek to authenticate electronic evidence—including the contents of email accounts, electronic devices, and surveillance videos—by means of certifications under FRE 902(11), (13), and (14).

Rules 902(13) and (14) of the FRE, which became effective in December 2017, provide a new mechanism for parties to authenticate evidence generated by electronic processes or systems. The new rules combine the conceptual frameworks of Rule 901(b)(9)—authentication by evidence describing a process or system that produces an accurate result—and Rules 902(11) and (12)—self-authentication of business records. Specifically, Rule 902(13) allows authentication by certification of "[a] record generated by an electronic process or system that produces an accurate result," and Rule 902(14) does the same for "[d]ata copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification."

9

The contents of email accounts received from service providers pursuant to search warrants, and which are certified by a competent custodian or technician, may include some data that constitutes business records and, even to the extent that they include data that are not business records, they are records generated by an electronic process or system that produces an accurate result. Those accounts, and excerpts from them, can therefore be authenticated by certification pursuant to Rule 902(11) and (13), and reliable copies and extracts from the originals by Rule 902(14).[3]

Similarly, digital video files generated by standard electronic surveillance cameras are records generated by an electronic process or system that produces an accurate result; as are forensic images of cellphones and other electronic devices. United States v. Davis, No. 18-CR-00131, 2021 WL 1931871, at *2-3 (D. Alaska May 13, 2021) (granting government's motions in limine to admit electronic evidence in the form of video surveillance under FRE 902(11) and 902(13); United States v. Dunnican, 961 F.3d 859, 872 (6th Cir. 2020) (affirming district court's decision to admit text message evidence extracted from defendant's phone as self-authenticating under FRE 902(14)); United States v. Anderson, -- F. Supp. 3d. --, 2021 WL 4427251, at *3 (E.D. Mich. Sept. 27, 2021) (finding text messages self-authenticating under FRE 902(14)). Excerpts from such records that are generated using standard electronic systems and processes to generate copies for use in discovery and as trial exhibits are examples of data copied from an electronic device, storage medium, or file which may be authenticated by a process of digital identification. Accordingly, these items of electronic evidence can be authenticated, pursuant to Rule 902(13) and (14), by certification of competent technicians who performed the extractions and generated the copies rather than by the live testimony of those technicians. Id. (finding digital records sufficiently authenticated under FRE 902(11) and 902(13) where the certificates were not testimonial in nature).

"The bar for authentication of evidence under Fed.R.Evid. 901(a) is 'not particularly high.'" United States v. Bout, 651 Fed. App'x 62, 63 (2d Cir. 2016) (quoting United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007)). "It is met where 'sufficient proof has been introduced so that a reasonable juror could find in favor of authenticity or identification." Id. at 6364 (quoting United States v. Tin Yat Chin, 371 F.3d 31, 38 (2d Cir. 2004)).

In the context of business records, which provided the conceptual framework for self-authentication of electronic evidence under Rules 902(13) and (14), the Supreme Court has held that admitting evidence that has been authenticated by affidavit or certificate does not violate a defendant's right to confrontation because certifications are not testimonial. See Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009). Relying on Melendez-Diaz, the Second Circuit and at least five other circuits have concluded that certifications authenticating records are not testimonial and therefore are permissible. See, e.g., United States v. Qualls, 613 F. App'x 25, 28 (2d Cir. 2015); United States v. Johnson, 688 F.3d 494, 504-05 (8th Cir. 2012);

---

[3] Self-authentication of electronic evidence by certification establishes that electronic evidence is authentic, not that it is relevant or non-hearsay. In this case, the contents of emails and other documents authenticated by certification are relevant and not hearsay for the reasons described above—namely, that they are defendant and co-conspirator statements in furtherance of the charged conspiracies. Relevance will additionally be established by witness testimony.

10

United States v. Yeley-Davis, 632 F.3d 673, 680-81 (10th Cir. 2011); United States v. Morgan, 505 F.3d 332, 339 (5th Cir. 2007); United States v. Ellis, 460 F.3d 920 (7th Cir. 2006); United States v. Weiland, 420 F.3d 1062, 1077 (9th Cir. 2005). The facts concerning the electronic systems that generate electronic records and the processes of making electronic copies, like the processes of maintaining business records, are not testimonial because they only establish authenticity—that the records were generated by a reliable process and are what they purport to be—and can therefore be established by certification without implicating the Confrontation Clause. It is the underlying records, not the certification of a custodian or technician who maintained or electronically copied them, that are introduced to establish the facts at trial. Consistent with this understanding of the confrontation right, federal law permits the authentication by certification of business records, electronic records generated by reliable electronic processes, and reliable electronic copies.

The government will continue working with defense counsel toward stipulations concerning electronic evidence, which, if reached, will obviate the need for a ruling on authentication by certification. In the event that those efforts fail (as they have to date), the government should be permitted to authenticate and offer as evidence copies and extracts from electronic surveillance videos, email accounts, and files from co-conspirators' electronic devices by certification, as permitted by FRE 902(11), (13), and (14). In addition, such a process would streamline the presentation of evidence at trial, eliminate unnecessary persons from the courtroom, and shorten the amount of time that jurors will need to sit for trial, which promotes efficiency, particularly in light of ongoing concerns about COVID-19 transmission.

VI. The Court Should Preclude Argument and Testimony that Seeks to Relitigate Defendants' Suppression Motions or Otherwise Insinuates that Evidence Was Unlawfully Obtained

The defendants should be precluded from arguing, commenting or eliciting testimony about the legality of the searches and seizures challenged in the defendants' respective motions to suppress, or otherwise arguing or insinuating that evidence was improperly obtained, or that there was something sinister about interagency cooperation in the course of conducting the investigation of the defendants.

The Court denied the defendants' respective motions to suppress in their entirety. (See ECF No. 182). For the reasons stated in the Court's April 22, 2022 Opinion and Order, evidence obtained as a result of the April 23, 2019 border search of defendant Kamaldoss, and from parcels intercepted on August 29, 2018 and January 8, 2019, was obtained lawfully, and it was not tainted by the coordination of the Food and Drug Administration and other law enforcement agencies. (Id.) Accordingly, any attempt by either defendant to raise claims that law enforcement's efforts were unlawful would be an impermissible attempt to relitigate an issue already decided by this Court, and which has no bearing on either defendant's guilt. United States v. Lights, No. 15 CR 721, 2016 WL 7098633, at *1-2 (S.D.N.Y. Dec. 5, 2016) ("The stop and subsequent searches were all based on valid probable cause. This issue has been litigated

and decided. No reference to the illegality of the stop or subsequent searches will be permitted at trial.").[4]

Any such arguments would be irrelevant under Rule 401, having no bearing on the question at issue, and any arguable probative value would be substantially outweighed by the risks enumerated in Rule 403, including unfair prejudice, confusion of the issues, and misleading the jury, as well as undue delay and waste of time.

VII.   The Court Should Preclude References to Punishment

The classification of charges and the penalties arising from conviction in this case are not relevant to the issue of defendant's guilt or innocence. Accordingly, they should not be alluded to, presented to, or disclosed to the jury. "It has long been the law that it is inappropriate for a jury to consider or be informed of the consequences of their verdict." United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). Indeed, "it is the practice in the federal courts to instruct juries that they are not to be concerned with the consequences to the defendant of the verdict, except where required by statute." Id.; see also Rogers v. United States, 422 U.S. 35, 40 (1975) (jury should have been admonished "that the jury had no sentencing function and should reach its verdict without regard to what sentence might be imposed").

Courts have repeatedly precluded evidence of the potential sentence a defendant faces on the grounds that such evidence is irrelevant, unfairly prejudicial and outside the province of the jury. See, e.g., United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences"). . In short, guilt should determine punishment, not the other way around, and the only purpose for invoking punishment at trial would be an "attempt[] to serenade [the] jury with the siren song of nullification." United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993). Therefore, the Court should preclude the defendants from referencing potential punishment and collateral consequences at trial.

---

[4] Rule 104 of the FRE makes clear that the Court decides "preliminary questions" outside the presence of the jury, including whether evidence is admissible. To permit the defense to argue or insinuate that the relevant seizures and searches were unlawful, or that the investigation of either defendant was somehow founded upon an impermissible premise, would flout Rule 104 and would invite a needless and irrelevant mini-trial on the scope of the Fourth Amendment and whether law enforcement properly obtained the evidence in this case. See generally United States v. Stewart, 433 F.3d 273, 313 (2d Cir. 2006). Any attempts to shift the jury's attention away from that question is a distraction from the trial and may be an attempt to appeal to a jury's feelings regarding law enforcement investigations, rather than their determination about the defendant's guilt in this case.

VIII.   Conclusion

For the foregoing reasons, the government respectfully submits that its motions in limine should be granted.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/
Margaret Schierberl
Robert M. Pollack
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (ARR) (by ECF)
Counsel of record (by ECF and E-mail)